**UNITED STATES DISTRICT COURT**
Eastern District of Kentucky
**EASTERN DISTRICT OF KENTUCKY** F I L E D
**CENTRAL DIVISION**
**FRANKFORT** APR 1 1 2019

AT COVINGTON
ROBERT R. CARR
CLERK U.S. DISTRICT COURT

**UNITED STATES OF AMERICA**

**V.**                                          **INDICTMENT NO.** 3:19-cr-24-GFVT-MAS

**DENVER D. TACKETT, DMD**

\* \* \* \* \*

**THE GRAND JURY CHARGES:**

At all times relevant to this Indictment:

1.      **DENVER D. TACKETT** was a licensed dentist practicing in McDowell,

Kentucky.

2.      **TACKETT** owned and operated **TACKETT FAMILY DENTISTRY** in

McDowell, Kentucky, which is in the Eastern District of Kentucky.

## BACKGROUND ON CONTROLLED SUBSTANCES

3.      The Controlled Substances Act ("CSA") governed the manufacture,

distribution, and dispensing of controlled substances in the United States.

4.      Under the CSA, the United States Drug Enforcement Administration

("DEA") regulated certain pharmaceutical drugs designated as "controlled substances"

because of their potential for abuse or dependence, their accepted medical use, and their

accepted safety for use under medical supervision. *See* 21 U.S.C. § 802(6).

5.      The DEA issued registration numbers to qualifying practitioners, including

dentists, which permitted them to dispense controlled substances consistent with the terms of that registration. 21 U.S.C. § 822.

6.     "A prescription for a controlled substance to be effective must be issued for a legitimate medical purpose by an individual practitioner acting in the usual course of his professional practice. The responsibility for the proper prescribing and dispensing of controlled substances is upon the prescribing practitioner. . . ." 21 C.F.R. § 1306.04(a).

7.     Oxycodone and hydrocodone were Schedule II controlled substances.

## BACKGROUND ON HEALTH CARE PAYERS

8.     Medicaid was a health care benefit program under 18 U.S.C. § 24(b); that is, a public or private plan or contract, affecting commerce, under which medical benefits, items and services were provided to individuals. Beneficiaries were required to meet certain conditions to get these benefits.

9.     The Centers for Medicare & Medicaid Services ("CMS") was a federal agency within the United States Department of Health and Human Services and was responsible for administering the Medicare and Medicaid programs. CMS had the authority to make coverage and medical necessity determinations.

10.     Medicaid was jointly funded by federal and state sources and administered by the CMS and by the Kentucky Cabinet for Health and Family Services, Department for Medicaid Services ("DMS"), located in Franklin County, Kentucky. Medicaid, through DMS, and through its fiscal intermediaries, ultimately reimbursed claims submitted by service providers from Franklin County, Kentucky.

11.     Federal regulations required that healthcare practitioners provide services economically and only when, and to the extent, those services were medically necessary, were of a quality meeting professionally recognized standards of healthcare, and were supported by evidence of medical necessity and quality in such form and fashion and at such time as may reasonably be required by a reviewing peer review organization in the exercise of its duties and responsibilities.  42 U.S.C. § 1395y(a)(1)(A).

12.     Among other services, Medicaid reimbursed dentists, either directly or through fiscal intermediaries, for certain dental procedures and services.  Generally, Medicaid reimbursed dentists for these costs if, among other requirements, they were reasonable and necessary for the diagnosis and treatment of an illness or injury.

### COUNT 1
### 18 U.S.C. § 1347

13.     Paragraphs 1 through 12 of this Indictment are realleged and incorporated by reference as though fully set forth herein.

### THE SCHEME AND ARTIFICE TO DEFRAUD

14.     From on or about 2003 through on or about September 2018, the exact dates being unknown, in Floyd and Franklin Counties, in the Eastern District of Kentucky, and elsewhere, **TACKETT** devised and executed, or attempted to execute, a scheme and artifice to defraud one or more health care benefit program(s) by means of false and fraudulent pretenses, representations and promises.

15.     It was part of the scheme to defraud that:

    a.   **TACKETT**, a licensed dentist, owned and operated **TACKETT FAMILY**

DENTISTRY.

b.  Patients presented to **TACKETT FAMILY DENTISTRY** with a variety of dental needs and ailments.

c.  **TACKETT** performed, and submitted claims for, dental procedures that were not reasonable and necessary for the diagnosis and treatment of a patient's illness or injury.

d.  **TACKETT** also "unbundled" claims by submitting claims for services that were already included in another claim that he submitted.

e.  **TACKETT** also submitted claims for payment for procedures that he did not actually perform.

f.  By doing the foregoing, **TACKETT** knowingly submitted, or caused to be submitted, materially false or misleading claims for payment to one or more health care benefit programs.

## EXECUTIONS OR ATTEMPTED EXECUTIONS OF THE SCHEME

16.  In furtherance of the scheme described above, **TACKETT** extracted patients' teeth without sufficient medical need or justification.  Some of the patients on whom **TACKETT** performed these unnecessary procedures were addicted to controlled substances.

17.  Additionally, **TACKETT** submitted claims for "surgical" extractions when (1) he had only performed a "simple" extraction (a lower reimbursing procedure); or (2) a "surgical" extraction was not medically reasonable or necessary given the patient's condition and needs.

18. In addition to performing medically unnecessary extractions, **TACKETT** submitted separate claims for medically unnecessary alveoloplasty procedures that were related or incidental to one or more unnecessary extractions.

19. It was also part of the scheme that **TACKETT** submitted claims for "emergency palliative" care without sufficient medical need or justification. For example, **TACKETT** submitted claims for "emergency palliative" care when he was simply providing routine postoperative care to patients following extractions. Medicaid included reimbursement for routine postoperative care in its payment for an extraction procedure. Moreover, any postoperative care for an unnecessary extraction procedure was also unnecessary.

20. It was also part of the scheme that **TACKETT** submitted claims for "incise and drain" procedures when he had not actually performed a reimbursable "incise and drain" procedure. Moreover, even if a given "incise and drain" procedure met the standard for reimbursement, it was still medically unnecessary if it was related to an earlier unnecessary extraction procedure.

21. In the course of his scheme, **TACKETT** knowingly submitted, or caused to be submitted, claims for payment to health care benefit programs for the following services or procedures, among others, that were (1) not medically necessary or (2) not actually performed:

| APPROX DATE OF SERVICE | PROCEDURE OR SERVICE | PROCEDURE CODE | PATIENT |
| --- | --- | --- | --- |
| 7/17/2006 | Emergency Palliative Treatment | D9110 | S.Ne. |
| 9/14/2016 | Surgical Extraction of Tooth | D7210 | J.Mu. |

| APPROX. DATE OF SERVICE | PROCEDURE OR SERVICE | PROCEDURE CODE | PATIENT |
|---|---|---|---|
| 9/14/2016 | Alveoloplasty | D7310 | J.Mu. |
| 10/12/2016 | Surgical Extraction of Tooth | D7210 | J.Mu. |
| 11/10/2016 | Surgical Extraction of Tooth | D7210 | K.Cr. |
| 11/14/2016 | Surgical Extraction of Tooth | D7210 | J.Mu. |
| 11/14/2016 | Alveoloplasty | D7310 | J.Mu. |
| 12/19/2016 | Surgical Extraction of Tooth | D7210 | A. Ma. (Gi.) |
| 12/27/2016 | Emergency Palliative Treatment | D9110 | A. Ma. (Gi.) |
| 12/6/2017 | Surgical Extraction of Tooth | D7210 | C.Pe. |
| 9/18/2018 | Simple Extraction of Tooth | D7140 | T.Os. |

## THE CHARGE

22.     From on or about 2003 through on or about September 2018, the exact dates being unknown, in Floyd and Franklin Counties, in the Eastern District of Kentucky, and elsewhere,

## DENVER TACKETT

knowingly and willfully executed, and attempted to execute, a scheme and artifice to defraud one or more health care benefit program(s) affecting commerce, as defined by Title 18, United States Code, Section 24(b), that is, Medicaid and other health care benefit programs, and to obtain money and property owned by, and under the custody of Medicaid and other health care benefit programs, in connection with the delivery of and payment for health care benefits, items, and services by means of false and fraudulent pretenses, to wit, causing claims for payment to be submitted for medically unnecessary dental services and procedures that resulted in serious bodily injury, and dental services and procedures that were not performed, all in violation of 18 U.S.C. § 1347.

## COUNTS 2-16
## 21 U.S.C. § 841(a)(1)

23.     Paragraphs 1 through 7 of this Indictment are realleged and incorporated by reference as though fully set forth herein.

24.     On or about the dates listed below, in Floyd County, in the Eastern District of Kentucky,

### DENVER TACKETT

did knowingly and intentionally distribute and dispense, outside the scope of professional practice and not for a legitimate medical purpose, a Schedule II controlled substance, as set forth below:

| Count | Date Filled | Patient | Prescription Number | Drug Name |
|---|---|---|---|---|
| 2. | May 14, 2014 | C.Ha. | 1702945 | Oxycodone 7.5mg |
| 3. | December 16, 2014 | A.As. | 1767829 | Hydrocodone 7.5mg |
| 4. | September 8, 2015 | V.Ha. | 1851086 | Hydrocodone 7.5mg |
| 5. | October 25, 2016 | K.Cr. | 1982996 | Oxycodone 16 |
| 6. | November 2, 2016 | T.Ha. | 1985607 | Oxycodone 7.5mg |
| 7. | November 14, 2016 | J.Mu. | 1169772 | Oxycodone 7.5mg |
| 8. | December 12, 2016 | A. Ma. (Gi.) | 1998015 | Hydrocodone 7.5mg |
| 9. | December 13, 2016 | L.Ha. | 605675 | Hydrocodone 7.5mg |
| 10. | March 16, 2017 | A.Br. | 2028814 | Hydrocodone 7.5mg |
| 11. | March 21, 2017 | T.Ma.(Be.) | 335816 | Hydrocodone 7.5mg |
| 12. | November 8, 2017 | Co.Li. | 2044080 | Hydrocodone 7.5 |
| 13. | December 6, 2017 | C.Pe. | 2107751 | Hydrocodone 7.5mg |
| 14. | April 4, 2018 | T.Os. | 2143331 | Hydrocodone 7.5 |
| 15. | April 5, 2018 | L.Ne. | 2143716 | Oxycodone 7.5mg |
| 16. | July 13, 2018 | S.Ne. | 2172325 | Hydrocodone 7.5mg |

each in violation 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2.

## FORFEITURE ALLEGATIONS
### 18 U.S.C. § 982(a)(7)
### 21 U.S.C. § 853

1.      Upon conviction of Count 1 in this Indictment, the defendant, **DENVER TACKETT**, shall forfeit to the United States pursuant to Title 18, United States Code, Section 982(a)(7), all property, real and personal, that constitutes or is derived, directly or indirectly, from gross proceeds of the violations, including but not limited to a sum of money equal to the amount of gross proceeds of the offenses.

2.      Upon conviction of Counts 2 through 16 contained in this Indictment, the defendant, **DENVER TACKETT**, shall forfeit to the United States pursuant to Title 21, United States Code, Section 853, any property constituting, or derived from, proceeds obtained, directly or indirectly, as a result of the violations, including but not limited to a sum of money equal to the amount of gross proceeds of the offenses and any property used, or intended to be used, in any manner or part to commit, or facilitate the commission of the offenses, including the real property listed below.

## REAL PROPERTY:

9759 KY Route 122, McDowell, Floyd County Kentucky 41647.

3.      If any of the above-described forfeitable property, as a result of any act or omission of the defendant:

        a.  cannot be located upon the exercise of due diligence;

        b.  has been transferred or sold to, or deposited with, a third party;

        c.  has been placed beyond the jurisdiction of the court;

     d.  has been substantially diminished in value; or

     e.  has been commingled with other property which cannot be divided without
difficulty;

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p),

as incorporated by Title 18, United States Code, Section 982(b) and Title 28, United States

Code, Section 2461, to seek forfeiture of any other property of the defendant up to the value

of the forfeitable property described above.

**A TRUE BILL**



**ROBERT M. DUNCAN, JR.**
**UNITED STATES ATTORNEY**

**JOSEPH BEEMSTERBOER**
**DEPUTY CHIEF, FRAUD SECTION**
**U.S. DEPARTMENT OF JUSTICE**

## **PENALTIES**

**COUNT 1:**      Not more than 10 years imprisonment, a fine of not more than $250,000, and a term of supervised release of not more than 3 years.

                        If the violation results in serious bodily injury, not more than 20 years imprisonment, $250,000 fine, and 3 years supervised release.

**COUNTS 2-16:**      Not more than 20 years imprisonment, a fine of not more than $1,000,000, and supervised release of at least 3 years.

**PLUS:**      Mandatory special assessment of $100 per count.

**PLUS:**      Restitution, if applicable.

**PLUS:**      Forfeiture as listed.